UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-mj-02636-REID

UNITED STATES OF AMERICA

v.

ALBERT DAVID NAE,
a/k/a "Jose Istueta,"

            Defendant.            /

FILED BY  MP  D.C.
Apr 5, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)? No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No.

4. Did this matter involve the participation of or consultation now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  /s/ Brian R.

Brian D. Ralston
Assistant United States Attorney
Court ID No.: A5502727
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: (561) 209-1068
Email: Brian.Ralston@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. 24-mj-02636-REID |
| ALBERT DAVID NAE, | ) |
| a/k/a "Jose Istueta," | ) |
|  | ) |
| Defendant | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2023__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) | Possession with intent to distribute a controlled substance |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Jesse Ricks, Special Agent DEA
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time.

Date: April 4, 2024

_____
Judge's signature

City and state: Miami, FL        Hon. Lisette M. Reid, United States Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Jesse Ricks, being first duly sworn, hereby depose and state as follows:

### AGENT BACKGROUND AND PURPOSE OF AFFIDAVIT

1. I am a Special Agent with the Drug Enforcement Administration (DEA) assigned to the West Palm Beach District Office within the DEA's Miami Field Division. As such, I am a "law enforcement Officer" of the United States within the meaning of Title 18, United States Code § 2510(7) and am empowered to conduct criminal investigations and to make arrest for offenses enumerated in Title 18, United States Code § 2516(1).

2. I have been a Special Agent with the Drug Enforcement Administration (DEA) since February 2012. I received basic training in narcotics investigations at the Justice Training Center located in Quantico, Virginia. I am currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. I have received specialized training in the means and methods used by narcotics traffickers to import and distribute narcotics, drug smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. I have personally conducted and participated in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. During the course of these investigations, I have participated in search warrant executions, debriefed or participated in debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. The aforementioned investigations resulted in the arrest and prosecution of numerous individuals for narcotics violations. Based upon my training and experience, I am familiar with the manner in which narcotics-trafficking organizations operate, including the manner in which various types of illegal drugs are cultivated, manufactured,

1

smuggled, distributed, or diverted, as well as methods used to finance drug transactions and launder drug proceeds. Additionally, I have received training in the use of wiretaps, telephone toll analysis, and wire intercept equipment, and have previously authored affidavits pertaining to the interception of wire and electronic communications. I have also participated in both the monitoring of wire and electronic interceptions and surveillance operations conducted in conjunction to the interception of wire and electronic interceptions and assisted by the use of electronic GPS monitoring and/or tracking devices.

3. This affidavit is made in support of a criminal complaint charging defendant Albert David NAE, aka "Jose Istueta", (hereinafter "NAE") with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). The information contained in this affidavit is based in part on information developed by DEA Special Agents, Task Force Officers and information obtained from other law enforcement personnel. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the criminal complaint, it does not include all facts known to me or to other law enforcement officers regarding this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

Introduction and Background

4. In early June 2023, a target of an ongoing DEA investigation began cooperating with law enforcement (hereinafter referred to as the "cooperating source" or "CS"). The CS provided information on a crystal methamphetamine distributor (hereinafter referred to as the "DISTRIBUTOR"), from which the CS had purchased crystal methamphetamine several times in the past.

Controlled Purchase in the Distributor's Residence

5.     On or around June 20, 2023, agents directed the CS to arrange to purchase one pound of crystal methamphetamine from the DISTRIBUTOR. The CS and the DISTRIBUTOR exchanged text messages and subsequently agreed to conduct the deal around noon on June 21, 2023.

6.     On June 21, 2023, the CS called the DISTRIBUTOR to arrange a meeting location. The DISTRIBUTOR requested the CS come to the DISTRIBUTOR's residence. Agents met with the CS, equipped the CS with a covert audio/video recording device, searched the CS and his vehicle for bulk currency, illegal drugs, and firearms (all with negative results), provided the CS with $3,000 United States Currency of DEA Official Advanced Funds and then followed the CS to the apartment building of the DISTRIBUTOR.

7.     Almost immediately after the CS placed the call to the DISTRIBUTOR, surveillance units observed the DISTRIBUTOR exit the DISTRIBUTOR's apartment and knock, sometimes pounding, on the door of the Apartment 518, which is on the same floor as the DISTRIBUTOR's apartment. After no one answered the door, the DISTRIBUTOR went to the elevator, went downstairs, and subsequently entered his vehicle. Law enforcement followed the DISTRIBUTOR's vehicle. It made an illegal U-turn at an intersection and then made a loop around the area before it returned to the apartment building and parked. The DISTRIBUTOR did not make any stops (other than those due to traffic signs or signals) or exit the vehicle anywhere along the way. Once back at this building, the DISTRIBUTOR exited his vehicle and returned to the fifth floor of his building. Once on the fifth floor, the DISTRIBUTOR knocked on the door of the apartment 518 again. The door was answered, and the DISTRIBUTOR entered Apartment 518. It

should be noted that the DISTRIBUTOR was observed in possession of small fanny pack or satchel every time law enforcement units observed him on this date.

8. While the CS was en route to the deal, the DISTRIBUTOR sent the CS two messages that read, "Call me before u come up pls he is dropping it off now" and "How far are u?" The DISTRIBUTOR was inside of the Apartment 518 when these messages were sent to the CS.

9. Once at the DISTRIBUTOR's apartment building, surveillance units observed the CS and the DISTRIBUTOR's residence from several vantage points during the operation. The CS knocked on the door of the DISTRIBUTOR's residence and no one answered. The CS returned to his vehicle. Around the same time that the CS returned to his vehicle, the DISTRIBUTOR exited Apartment 518 and entered his apartment.

10. Once inside his vehicle again, the CS called the DISTRIBUTOR. The DISTRIBUTOR requested the CS come back upstairs and indicated they just missed each other. The CS returned to the DISTRIBUTOR's residence and entered as the door was barely cracked open. Once the CS was inside the DISTRIBUTOR's residence, the DISTRIBUTOR provided the CS with several Ziploc style plastic bags that contained crystal methamphetamine. The CS asked if he needed to "wash" the crystal methamphetamine and the DISTRIBUTOR stated, "this stuff doesn't seem too bad to me." The CS provided the CD with the $3,000 of United States Currency. They continued to discuss the quality of the product.

11. Shortly after, the CS left the residence, returned to his vehicle carrying a white plastic bag, and departed from the area followed by me and a Task Force Officer. The Task Force Officer and I met the CS at another location and retrieved the plastic bag which contained the crystal methamphetamine. We then searched the CS and his vehicle for bulk currency, illegal

drugs, and firearms, with negative results. Law enforcement transported the crystal methamphetamine to the DEA West Palm Beach District Office, field tested it with a positive result for the presence of methamphetamine and shipped it to the DEA Southeast Laboratory for analysis. The laboratory has since confirmed the substance purchased was 433.5 grams (± 0.2 grams) of Methamphetamine Hydrochloride with a purity of 100% (± 6%).

Arrest of the DISTRIBUTOR

12.     On July 13, 2023, DEA arrested the DISTRIBUTOR during the execution of a federal search warrant on the DISTRIBUTOR's residence. The DISTRIBUTOR was charged by indictment for distribution of methamphetamine, possession with intent to distribute methamphetamine, cocaine, LSD, MDMA, ketamine, and alprazolam, and possession of a firearm in furtherance of a drug trafficking crime.

Attempted Search of Apartment 518

13.     During the execution of the search warrant on the DISTRIBUTOR's residence, law enforcement knocked on the door of Apartment 518 and requested consent to search the apartment. Law enforcement spoke with a male, since identified as Albert NAE ("NAE"), and a female. Although NAE and the female allowed law enforcement inside of Apartment 518, they did not consent to a search of the residence.

Information Provided by the DISTRIBUTOR

14.     Since the DISTRIBUTOR was arrested and on July 19, 2023, the DISTRIBUTOR provided information to law enforcement through his defense counsel. In summary, the DISTRIBUTOR provided that he drove "Albert" to the Ives Dairy Self Storage facility located at 20340 NE 15th Court, Miami, FL 33179. During the course of conversation with "Albert," the DISTRIBUTOR learned that "Albert" stores crystal methamphetamine at that storage facility and

that it may be as much as twenty (20) pounds of crystal methamphetamine. The DISTRIBUTOR added that "Albert" lives in apartment 518 and uses a fake identification in the name of "Jose."

### Identification of Unit #419

15.  On July 20, 2023, investigators served a DEA Administrative Subpoena to the Ives Dairy Self Storage facility. In response, investigators obtained records that show "Jose F Istueta" rented the Unit #419 on October 19, 2021, as well as, a copy of the driver's license presented by "Jose F Istueta." Prior to the issuance of the subpoena, investigators had already identified NAE as being associated with Apartment 518 of the DISTRIBUTOR's apartment building. Upon review of the driver's license provided by "Jose F Istueta" agents determined the photograph on the driver's license was actually NAE.

16.  Following the identification of Unit #419, law enforcement deployed a certified narcotics detecting K-9 on several units in the Ives Dairy Self Storage, near to and including the Unit #419. The K-9 alerted to the presence of the odor of narcotics at the Unit #419. Following the positive alert, I requested and obtained a federal search warrant (23-MJ-03432) for Unit #419 and myself and other agents executed the search warrant that same day. Inside the unit, we found several suitcases. Inside two of the suitcases we found bags that contained approximately eight (8) total pounds of crystal methamphetamine and one large zip style bag with suspected crystal methamphetamine residue inside. The crystal methamphetamine was later submitted to the DEA Southeast Laboratory as three separate exhibits. The laboratory confirmed the substance seized to be approximately 3,517.8 grams of crystal methamphetamine with a purity of $100\% \pm 6\%$. The laboratory also confirmed the residue in the black bag to be crystal methamphetamine. In addition, the laboratory analyzed the exhibits for fingerprints. The laboratory found one latent fingerprint suitable for comparison on the one black zip lock bag. That print was identified to

the known fingerprint card of NAE. Furthermore, one of the bags which contained crystal methamphetamine seized from inside the suitcases in the storage unit was clear on one side and black on the other side. The DISTRIBUTOR sold to the CS crystal methamphetamine contained in that same style bag (black on one side and clear on the other) during the above described controlled purchase.

17. Following the execution of the search warrant on Unit #419, DEA deployed a covert surveillance motion activated camera watching Unit #419. A review on the camera footage revealed that on July 23, 2023, at approximately 12:24 pm, NAE walked up to Unit #419 carrying one bag in his hand with another bag hanging from his shoulder. NAE unlocked the padlock which secured the door to the unit and entered the unit. At approximately 12:50 pm, NAE exited the unit, closed the door, secured the unit with the padlock and walked away with the same bags with which he entered. It should be noted that the camera did not record for the entire duration of time that NAE was inside the unit but it did record for several periods of time between 12:24 pm and 12:50 pm based on other motion around the unit. Therefore, I do not believe that NAE exited the unit for that 26-minute period of time. According to a National Weather Service Forecast, Florida 2023 Weather Summary, posted on www.weather.gov, the highest temperature of the year at the Miami International Airport was 98 degrees on July 23, 2023. Based on my training and experience, I believe that it was very unusual for NAE to remain enclosed in the storage unit in such heat unless he was searching for the crystal methamphetamine that was no longer in his unit which NAE could have sold for a total of approximately $19,200 USC (approximately eight pounds at $2,400 USC per pound).

Proffer Interview of Distributor

18.     On August 30, 2023, DEA conducted an interview of DISTRIBUTOR. During the interview, DISTRIBUTOR told investigators that he obtained the pound of crystal methamphetamine that he sold to CS on June 21, 2023 from NAE inside of NAE's apartment. The DISTRIBUTOR estimated that he has purchased a total of twenty-five (25) pounds of crystal methamphetamine from NAE. Finally, the DISTRIBUTOR said that after deals inside of NAE's apartment, NAE would take the cash provided by the DISTRIBUTOR, separate it into bands of $1,000 USC and take it into NAE's bedroom out of view of the DISTRIBUTOR. The facts listed in the affidavit to this point lead me to believe that NAE uses his residences to store and distribute crystal methamphetamine on several occasions.

## CONCLUSION

Based on my training and experience and the facts listed above, I believe that Albert NAE supplied the CD with one pound of crystal methamphetamine on June 21, 2023. Based on the same, I further believe that NAE knowingly stored additional crystal methamphetamine in Unit #419 of the Ives Dairy Self Storage. Therefore, I submit that there is probable cause to believe that Albert David NAE did commit the criminal offenses of distribution of a controlled substance and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1).

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
JESSE RICKS
SPECIAL AGENT
DRUG ENFORCEMENT ADMINSTRATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time this __4th__ day of April 2024.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE